IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-01513-MSK

**HECOTR MARQUEZ-HERNANDEZ,**

Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

Defendant.

**ORDER REVERSING AND REMANDING DISABILITY DETERMINATION**

**THIS MATTER** comes before the Court as an appeal from the Commissioner's Final Administrative Decision ("Decision") determining that the Plaintiff Hector Marquez-Hernandez is not disabled within the meaning of sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Having considered all of the documents filed, including the record (#**14**), the Court now finds and concludes as follows:

**JURISDICTION**

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g). Mr. Marquez-Hernandez protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act in January 2014. He claimed that he was disabled based beginning July 1, 2013. The state agency denied his claim. He requested a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision. Mr. Marquez-Hernandez appealed to the Appeals Council, which denied his request for review, making the ALJ's determination the final decision of the

Commissioner. Mr. Marquez-Hernandez timely appealed to this Court, which reviews the ALJ's decision as the Commissioner's final denial of benefits. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## STATEMENT OF FACTS

The Court offers a brief summary of the facts here and elaborates as necessary in its analysis.

Mr. Marquez-Hernandez was born in 1967. He was 46 years on his initially-alleged disability onset date in July 2013, and 48 years old at the time of the ALJ's decision. He has a high school education and one year of college. He has work history as a press operator for graphics and printing companies. Mr. Marquez-Hernandez reported having a stroke in July 2013, at which time he stopped working. He suffered a second stroke in October 2013. Mr. Marquez-Hernandez has since experienced various stroke-related symptoms, including impaired vision, partial paralysis or weakness on his right side, and slurred speech. In addition, the record reflects mental health and non-exertional impairments which are the focus of this appeal. However, since he does not contest the ALJ's treatment of the medical records and opinions or the ALJ's findings of the relevant conditions and impairments, the Court need not further detail the medical record.

Mr. Marquez-Hernandez filed protective applications for DIB & SSI on January 31, 2014. His applications were initially denied on August 22, 2014. He then filed a written request for a hearing on September 11, 2014. Prior to the hearing, he amended the alleged onset date of his disability to November 22, 2013. The hearing was held on February 4, 2016, and Mr. Marquez-Hernandez and a vocational expert ("VE") testified. Following the hearing, the ALJ issued a written decision on March 2, 2016, denying benefits.

**THE ALJ'S DECISION**

The ALJ analyzed this case pursuant to the sequential five-step inquiry. At step one, the ALJ found Mr. Marquez-Hernandez had not worked or engaged in substantial gainful activity since his amended alleged onset date. At step two, the ALJ found Mr. Marquez-Hernandez had the following severe impairments: impaired vision in his left eye, status-post two strokes; obesity; hypertension; organic mental disorder; depression; and polysubstance abuse. At step three, the ALJ found Mr. Marquez-Hernandez's impairments did not meet or equal the severity of a listed impairment in the appendix of the regulations. In making this finding, the ALJ considered Mr. Marquez-Hernandez's mental impairments, finding he had mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace, noting, *inter alia*, that Mr. Marquez-Hernandez reported he "does not finish what he starts, has difficulty following written instructions, and needs reminders of what to do." (**#14** at 16). The ALJ concluded that Mr. Marquez-Hernandez's mental impairments did not include at least two areas of "marked" limitations. Therefore, she found his "mental impairments, while they are severe, do not involve such severe symptoms as to satisfy the criteria for any appropriate listings." *Id.*[1]

The ALJ then assessed Mr. Marquez-Hernandez's Residual Functional Capacity ("RFC") and determined that:

---

[1] The ALJ's analysis followed the process for evaluating mental impairments, and the categories of such impairments, as prescribed by the Commissioner's regulations. These include the "psychiatric review technique," or "PRT," and the so-called "paragraph B" and "paragraph C" criteria for describing adult mental disorders. *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The regulations identify four functional areas in which the ALJ will rate the degree of a claimant's functional limitations, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

> [Mr. Marquez-Hernandez] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) except <u>he is limited to unskilled, SVP 1 or 2 work, can have minimal to no direct contact with the public</u>; should avoid unprotected heights and moving machinery; can frequently balance, stoop, kneel, crouch and crawl; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can frequently reach overhead, in front, and laterally with the dominant right upper extremity; and <u>can perform no work requiring frequent, fine communication due to slurred speech</u>. He can lift or carry 10 pounds frequently and 20 pounds occasionally. He could stand or walk with normal breaks for a total of 6 hours in an 8-hour workday; sit with normal breaks for a total of 6 hours in an 8-hour workday. He could perform pushing and pulling motions with his upper and lower extremities within the weight restrictions given except pushing and pulling with his right dominant upper extremity would be limited to frequent.

*Id.* at 17 (emphasis added). The ALJ then found, at step four, that Mr. Marquez-Hernandez was unable to perform past relevant work as a press operator.

At step five, based on the testimony of the VE, the ALJ found that Mr. Marquez-Hernandez could perform jobs that exist in significant numbers in the national economy. *Id.* at 28–29. Specifically, the ALJ determined that Mr. Marquez-Hernandez could work in occupations such as production assembler, dry cleaner, and "marker" (*i.e.*, a price marker/ticket marker, or marking clerk, *see* Dictionary of Occupational Titles No. 209.587-034). *Id.* at 29, 63. Given the ALJ's step five determination, she concluded that Mr. Marquez-Hernandez was not disabled as defined by the Social Security Act.

## ISSUES PRESENTED

Mr. Marquez-Hernandez raises a single claim of error. He argues that after the ALJ found he had moderate limitations as to concentration, persistence, and pace, the ALJ failed to account for that finding in formulating her statement of Mr. Marquez Hernandez's RFC, as well as in the dispositive hypothetical question to the VE.

4

## STANDARD OF REVIEW

On appeal, a reviewing court's judicial review of the Commissioner of Social Security's determination that claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Hamilton v. Sec'y of Health &Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Substantial evidence means evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla but less than a preponderance of the evidence. *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although a reviewing court must meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

In addition, if the ALJ failed to apply the correct legal standard, the decision must be reversed, regardless of whether there was substantial evidence to support factual findings. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Mr. Marquez-Hernandez's single claim of error is that "the ALJ's RFC finding and dispositive hypothetical question [posed to the VE] omitted mental functional limitations which the ALJ herself found to be present." Pl. Br. (#**17**), at 3. Specifically, he claims that although the ALJ found Mr. Marquez-Hernandez suffers from a moderate limitation in concentration,

persistence, and pace, the articulated RFC and hypothetical question failed to account for that finding, and "did not include any mental functional limitations." *Id.* at 4.

The Agency maintains that by including in the RFC a limitation to "unskilled, SVP 1 or 2 work," with "minimal to no direct contact with the public," and "no work requiring frequent, fine communication due to slurred speech," the ALJ adequately accounted for all the mental impairments that she had found. *See* Def. Resp. Br. (#**18**), at 6–11. The Court agrees with Mr. Marquez-Hernandez that the ALJ's articulation of the RFC erred by failing to adequately account for her own finding of mental impairments.

**A.      Legal Principles**

Initially, the impairments, including mental impairments, which an ALJ identifies at steps two and three are distinct from the functional limitations which must be identified and described in an RFC. The RFC finding requires a "more detailed assessment." Social Security Ruling (SSR) 96-8P, 1996 WL 374184, at *4 (July 2, 1996); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Bales v. Colvin*, 576 F.App'x 792, 797 (10th Cir. 2014). However, the RFC must be assessed based on all of the relevant evidence, and must account for "all of [the claimant's] medically determinable impairments . . . including [claimant's] impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(1)–(2). In addition, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8P) (internal quotation marks omitted; alterations incorporated).

Further, "mental functions . . . 'are not skills but, rather, general prerequisites for most work at any skill level." *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (quoting *Wayland v. Chater*, 76 F.3d 394, 1996 WL 50459, at * 2 (10th Cir. 1996) (table)). *Accord*

*Vialpando v. Colvin*, 2015 WL 1433293, at *6 (D. Colo. March 26, 2015) ("a limitation of skill level just accounts for issues of skill transfer, not impairment of mental functions" (citing *Chapo*, 682 F.3d at 1290 n.3)). Agency guidance draws the same distinction:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. * * * Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at * 6.

The Tenth Circuit's discussion in *Wayland* is illustrative; and, while unpublished, was cited with approval by the published opinion in *Chapo*:

> [W]hen mental impairments diminish a claimant's residual functional capacity, our cases generally require the production of expert vocational testimony or other similar evidence to establish the existence of jobs [the mentally impaired claimant could still perform] in the national economy to satisfy the Secretary's burden at step five.
>
> Moreover, while there may be circumstances in which a particular mental limitation could be so obviously accommodated by a reduction in skill level that particularized vocational evidence addressing that limitation might be dispensed with, that is clearly not the case here. Indeed, deficiencies in concentration like plaintiff's may well be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or her coworkers, in the kinds of repetitive tasks typically involved in unskilled work. In short, the tacit premise in the ALJ's analysis, *i.e.*, that a cognitive or emotional impairment may be functionally equated with the lack of a skill, as that term is employed in the Secretary's regulations, is wrong. Numerous authorities illustrate the basic point that intact mental aptitudes are not skills, but, rather, general prerequisites for most work at any skill level.

*Wayland*, 1996 WL 50459, at * 2 (citations and internal quotation marks omitted; alterations as in original); *see also Chapo*, 682 F.3d at 1290 n.3 (citing *Wayland*).

7

**B.     Analysis**

Applying the well-established distinction between work-related skills on the one hand, and intact or impaired mental function on the other, the Court finds that the skill-related limitation to "unskilled, SVP 1 or 2 work" in the ALJ's RFC was insufficient to account for the impairments the ALJ had found, particularly the finding of moderate difficulties as to concentration, persistence or pace. The other limitations stated in the ALJ's RFC also do not account for the cognitive limitations which the ALJ found present. The limitation to "no direct contact with the public" relates to social limitations and would not accommodate Mr. Marquez-Hernandez's impairment as to concentration, persistence, or pace. Likewise, the limitation to "no work requiring frequent, fine communication" explicitly accounts only for his slurred speech. The remaining limitations in the RFC relate only to physical impairments. No accommodation in the RFC relates to or accounts for the finding of an impairment as to concentration, persistence or pace. *See generally* Decision (#**14**), at 17.

The Agency's argument that the RFC adequately accounted for all Mr. Marquez-Hernandez's limitations is unpersuasive. The Agency correctly points out that an ALJ need not repeat the step two and three impairment findings within the articulation of an RFC, so long as ALJ has "incorporated [those] limitations by stating how the claimant was limited in the ability to perform work-related activities." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). Therefore, the ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Id.* It is therefore not always error, for example, to address a finding of moderate limitations by "restricting the claimant in jobs involving complex tasks, close supervisions, or meaningful interaction with supervisors or peers." *Id.* (discussing with approval *Lee v. Colvin,* 631 F.App'x 538 (10th Cir. 2015)). But that did not occur here, and these general

8

statements of law do not alter the distinction between mental functions on the one hand, and job skills on the other. The RFC as articulated by the ALJ here did not include work-related limitations to account for the mental impairments the ALJ had already found.

The Agency's reliance on the Tenth Circuit's decisions in *Smith* and in *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) does not change this conclusion. Both *Smith* and *Vigil* held that the RFC limitations stated in the records of each case had been sufficient to account for the impairments that were reflected, again, in the records of those cases. Neither *Smith* nor *Vigil* reflects a blanket rule that a generally-stated limitation to "unskilled" work will be sufficient to account for any or all mental health impairments that the ALJ has found. *Vigil* maintains only that a "finding of a moderate limitation in concentration, persistence or pace at step three does not *necessarily* translate to a work-related functional limitation for the purposes of the RFC assessment." 805 F.3d at 1203 (10th Cir. 2015) (emphasis added). But, *Vigil* also recognized the continuing viability of *Chapo*, in which the court found it "doubtful" that a "vague catch-all" limitation such as "to 'simple' work" would be sufficient where the record includes findings of specific "functionally distinct mental limitations" 682 F.3d at 1290–91 n.3.

*Smith* and *Vigil* therefore left plain that there may be cases in which "an ALJ's limitation to 'unskilled' work [will] *not* adequately address a claimant's mental limitations." *Vigil,* 805 F.3d at 1204 (emphasis added). The fact that the ALJ in *Vigil* adequately accounted for a finding of moderate impairment "by limiting [the claimant] to unskilled work," *id.*, does not mean that general restriction is adequate where the ALJ's own findings reflect more specific impairments, as is true here. In short, a case-specific analysis is required. Conducting such a review, and informed by cases cited by both parties, the Court finds that the mental impairments found by the ALJ here were not adequately reflected in her formulation of the RFC.

*Hernandez v. Colvin*, 567 F.App'x 576 (10th Cir. 2014), cited by the Commissioner, and *Wiederholt v. Barnhart*, 121 F.App'x 833, 839 (10th Cir. 2005), cited by Mr. Marquez-Hernandez, provide an on-point contrast. In *Hernandez*, the record before the ALJ included mental impairment opinions offered by a retained psychologist. But the ALJ gave these "little weight," and the Tenth Circuit agreed they had "nothing specific" to support them. *Id.* at 580, 582. The ALJ "did not make any specific findings regarding any mental limitations other than a possible learning disorder." *Id.* at 583. The Tenth Circuit found this was adequately addressed by an RFC limitation to "unskilled" work, but made a point to "acknowledge that a limitation to 'unskilled' work may be too broad to account for all the limitations where an ALJ makes specific findings regarding a claimant's mental impairments." *Id*.

The presence of specific findings of impairment distinguished *Wiederholt* from *Hernandez*. In *Wiederholt*, similar to the record here, the ALJ found the claimant had "mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace." 121 F. App'x at 839. However, the only relevant limitation included in the RFC was to "to simple, unskilled job tasks." *Id.* at 839. Given the more specific limitations found by the ALJ, the generality of these RFC limitations constituted reversible error: "The relatively broad, unspecified nature of the description 'simple' and 'unskilled' [did] not adequately incorporate the ALJ's additional, more specific findings regarding [the claimant's] mental impairments." *Id.* For the same reason, the hypothetical question posed to the VE was also "flawed." *Id.*

This case is like *Wiederholt* and unlike *Hernandez*. Here, the ALJ made a specific finding of a "moderate" impairment as to concentration, persistence or pace, as in *Wiederholt*. Unlike the more limited finding of a "possible learning disorder" in *Hernandez*, the impairment

10

finding here was not adequately accounted for in the RFC. The general limitation to unskilled work was inadequate to account for a cognitive limitation as to concentration, persistence, or pace, given that skill levels are distinct from mental function. *Chapo*, 682 F.3d at 1290 n.3; *Wiederholt*, 121 F. App'x at 839; *accord Vialpando*, 2015 WL 1433293, at *7 (the ALJ "erred in translating Plaintiff's impairments to a simple reduction to unskilled work," which did "not adequately take into account Plaintiff's memory and concentration impairments").

This conclusion is unaltered by cases relied upon by the Commissioner. In *Vigil*, the RFC limitation was arguably comparable to that here—the claimant was "unable to perform complex tasks, such that he is limited to jobs with a specific vocational preparation ('SVP') of one or two." 805 F.3d at 1201. However in *Vigil*, the ALJ's analysis included an explanation of why, despite finding "some problems with concentration, persistence, and pace" the claimant "retained enough memory and concentration to perform at least simple tasks." *Id.* at 1203. Here, the ALJ's analysis did not correlate the mental impairment findings with the ability to perform any tasks. (#**14** at 17–27.)[2]

In both *Smith* and *Lee v. Colvin* (on which *Smith* relied), the RFCs included functional limitations beyond the bald limitation to "unskilled" (SVP one or two) work included here. *See Smith*, 821 F.3d at 1269 (claimant "could engage in only simple, repetitive, and routine tasks");

---

[2] The ALJ here noted generally that Mr. Marquez-Hernandez's "statements concerning the intensity, persistence and limiting effects of *these symptoms* are not entirely credible." (#**14** at 19 (emphasis added)). But this general statement refers as a whole to a discussion of *all* "functional limitations," including "his ability to lift, squat, reach, walk, kneel, talk, climb stairs . . . complete tasks, concentrate, understand, follow instructions, and use his hands." *Id.* at 18. Beyond that, the ALJ's narrative summarizes evidence relevant to Mr. Marquez-Hernandez's mental impairments, including memory, concentration, and "attentional abilities." *Id.* at 24. It gives "little weight" to certain medical and mental health opinions, and "some weight" to the state agency psychological consultants. *Id.* at 27. But the RFC analysis never revisits or qualifies the ALJ's own finding of a moderate impairment as to concentration, persistence or pace, and never offers any explanation of why a general limitation to "unskilled" work would be sufficient to accommodate Plaintiff's specific mental impairments.

*Lee* 631 F. App'x at 542 ("Claimant can perform simple tasks" "work with routine supervision" and relate to supervisors and papers "on a superficial work basis"). Likewise, in *Bales*, the RFC was more specific and functionally-stated than is true here, limiting the claimant to "medium work, limited to simple, routine tasks involving no significant public interaction and only superficial and incidental interaction with co-workers and supervisors." 576 F.App'x at 795. Moreover, the RFC "incorporat[ed] the most restricted mental RFC limitations suggested" in the record, so that there was "no error in the ALJ not importing . . . limitations identified generally [at step three] into the more detailed RFC determination." *Id.* at 798. Thus in all of these cases, the articulation of the RFC included functional limitations beyond the mere restriction to "unskilled" work included here. In this case, the RFC is less detailed that the mental impairments found by the ALJ at step three, making no acknowledgement of that finding.

*Paulsen v. Colvin*, 665 F.App'x 660 (10th Cir. 2016), also cited by the Commissioner, stands only for the proposition that the RFC and hypothetical questions should not use general terms such as "moderate" reflecting the step three impairment findings, but should "describe function" and "usefully convey the extent of capacity limitations." *Id.* at 668. That is what the RFC failed to do here.

Lastly, in *Jaramillo v. Colvin*, 576 F.App'x 870 (10th Cir. 2014), the record reflected only a mild impairment, and the RFC again included more specific functional limitations, "to simple, routine, repetitive and unskilled tasks." *Id.* at 872. That adequately reflected the functional impairments supported by the record and discussed in the ALJ's analysis. *Id.* at 875. Here, on the other hand, the RFC contained *only* the skill-based limited to SVP-one or -two work, and the ALJ's "narrative discussion" analyzing RFC did not account for or qualify her own prior finding of a moderate limitation as to concentration, persistence, or pace. *See Wells*,

727 F.3d at 1065.

In sum, *Chapo*, *Vigil*, *Smith*, and the other cases cited show that a case-by-case analysis is required to determine whether an RFC's limitations adequately account for all impairments found by the ALJ and supported by the record. Limited or general findings of impairment do not *necessarily* translate into a work-related functional limitation, *Vigil*, 805 F.3d at 1203, and may be adequately addressed by a general limitation to "unskilled" work, *see Smith*, 821 F.3d at 1269; *Hernandez*, 567 F.App'x at 583. But where an ALJ has found more specific limitations, the RFC must more specifically account for those impairments in the RFC. *See Chapo*, 682 F.3d at 1290–91 n.3; *Wiederholt*, 121 F.App'x at 839. Here, the ALJ's finding of a moderate impairment as to concentration, persistence or pace was not addressed in the ALJ's RFC analysis and not reflected by any limitation stated in the RFC.

Further, as a consequence of this omission, the hypothetical question posed to the VE was also flawed. *See Chapo*, 682 F.3d at 1291 n.3 ("the failure of [an] ALJ to include his own mental restriction would be fatal to the validity of the hypothetical to the VE" (citing *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000)). The Commissioner therefore failed to carry the burden at step five of establishing that there are jobs available in the economy which Mr. Marquez-Hernandez could perform, given proper consideration of all his impairments. *Thompson*, 987 F.2d at 1487; 20 C.F.R. §§ 404.1560(c)(2) & 416.960(c)(2).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** to the ALJ for further proceedings. The Clerk shall enter a judgment in this matter.

Dated this 22nd day of May, 2018

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Court